ARSEN LAZAROS ET AL. *v.* CITY OF
WEST HAVEN ET AL.

Superior Court        Judicial District of        File No. 278994
                      New Haven

Memorandum filed August 24, 1994

*Charles A. Sherwood,* for the plaintiffs.

*Hogan & Rini* and *West Haven Corporation Counsel,* for the named defendant.

*Jerome, Lacobelle, Vishno, Reiger & Maser,* for the defendant West Haven Redevelopment Agency.

HON. JOHN C. FLANAGAN, JUDGE TRIAL REFEREE. The present case arises out of the actions of the defendant city of West Haven (city) and the defendant West Haven redevelopment agency (redevelopment agency) in connection with redevelopment in the Savin Rock area of West Haven.

In 1966, the West Haven city council approved a redevelopment plan previously adopted by the West Haven redevelopment agency. In 1977, the plaintiffs, Arsen Lazaros and Emanuel Sainis, purchased a parcel of land (parcel L) in the redevelopment area. In 1978, desiring to modify the original plan, the defendants solicited the consent of the plaintiffs and, in consideration of giving their consent the plaintiffs, in 1979, were given an opportunity to purchase another parcel of land (parcel M) to develop "for commercial, recreation and apartment purposes." The plaintiffs' plans for development were approved by the West Haven redevelopment agency but disapproved by the West Haven city council (city council), thus giving rise to this litigation which was returnable to the Superior Court for the judicial district of New Haven on January 17, 1989. The present case, which was claimed for trial by jury, is complex and involves a broad spectrum of issues and prayers for relief.

Prior to and during the course of jury selection, the court spent a great deal of time conferring with counsel in an effort to isolate critical legal issues with the objective of resolving them prior to the commencement of the trial itself and, thereby, simplifying the trial and shortening its length.

Counsel and the court agreed that the appropriate procedural vehicle to accomplish this objective was a motion to strike directed to various allegations in the amended complaint dated July 26, 1994, the substance of which has remained unchanged from the outset. Thus, the defendants filed several motions to strike addressed to various legal issues hereinafter set forth.

A motion to strike, like the demurrer of old, tests the legal sufficiency of a pleading. Practice Book § 152; *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988). It admits facts only, not legal conclusions or the truth or accuracy of opinions stated in the pleading. *Maloney* v. *Conroy*, 208 Conn. 392, 394, 545 A.2d 1059 (1988); *McAdam* v. *Sheldon*, 153 Conn. 278, 282, 216 A.2d 193 (1965); *Greene* v. *Metals Selling Corp.*, 3 Conn. App. 40, 42, 484 A.2d 478 (1984).

I

THE DEFENDANTS' MOTION TO STRIKE THE PLAIN-
TIFFS' CLAIM THAT THE DEFENDANTS BREACHED
AN AGREEMENT TO SELL PROPERTY IN THE
REDEVELOPMENT AREA (PAR-
CEL M) TO THEM

The essential allegations in the complaint, insofar as they are pertinent to the issue at hand and which are deemed to be admitted, are as follows: (1) Lazaros and Sainis, were the owners of a redevelopment parcel of land (parcel L) located in the "Savin Rock Urban Renewal" area; (2) subsequent to the acquisition of this parcel on which a corporation known as the S & L

Corporation, in which Lazaros and Sainis were stockholders, operated a restaurant known as Harbor Mist, the defendants desired to modify the renewal plan; (3) modification of the renewal plan required the consent of the plaintiffs, who objected to it because it would have a detrimental effect on their business and investment; (4) in consideration of giving their consent, the plaintiffs were extended an "option" to purchase and to develop a contiguous parcel of land (parcel M); (5) the city through its legislative body (the city council), approved and agreed to this modification agreement, including the "option" to the plaintiffs to purchase and to develop parcel M; (6) Lazaros and Sainis (together with the other plaintiffs) thereafter submitted plans to the redevelopment agency for redevelopment of parcel M for the construction of a condominium complex; (7) the plans were approved by the redevelopment agency and Lazaros and Sainis were designated as the developers of parcel M; (8) Lazaros and Sainis in due course secured the approval of their plans by all applicable and necessary agencies and thereafter submitted their plans to the city council which denied approval of their plans without giving any reason why; and (9) the "Agreement of Plan Changes" that was attached to the complaint provides, inter alia, that "if all LPA approvals are granted, the LPA shall submit Final Design Plans to the City Council for approval or rejection . . . 30 days after approval of Final Design Plans by the City Council the Land Disposition Agreement will be signed."

Paragraph thirty-two of the amended complaint alleges that the denial of approval of these plans by the city council was unreasonable, dishonest, in bad faith and constituted a breach of contract.

Upon reflection, the court concludes that the allegations that the denial of the approval of the plaintiffs' plans by the city council was unreasonable, dishonest,

in bad faith and unsupported by the allegation of subordinate facts, are conclusions not admitted by the motion to strike, and, therefore, are not an element in the present case. *McAdam* v. *Sheldon*, supra, 153 Conn. 282–83.

The claim with respect to a breach of an agreement by the defendants to sell parcel M to the plaintiffs fails because there was no breach of this agreement. The modification agreement clearly and specifically provided that final design plans had to be submitted to the city council for approval or rejection and that the land disposition agreement would be signed thirty days after approval of final plans by the city council. The requirement of approval by the city council is an integral part of the modification agreement and cannot be ignored. *Albert Mendel & Son, Inc.* v. *Krogh*, 4 Conn. App. 117, 123, 492 A.2d 536 (1985).

Where the contract terms are clear, the contract should be given effect according to its terms. *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.*, 178 Conn. 594, 599, 424 A.2d 277 (1979).

In interpreting a contract, a court cannot import or add new or different terms. *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 19, 485 A.2d 1285 (1985); *Cirrito* v. *Turner Construction Co.*, 189 Conn. 701, 706–707, 458 A.2d 678 (1983). Concerning the intention of the parties, the applicable rule is that it "is not what intention existed in the minds of the parties but what intention is expressed in the language used. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citation omitted; internal quotation marks omitted.) *Reese* v. *First Connecticut Small Business Investment Co.*, 182 Conn. 326, 327, 438 A.2d 99 (1980).

As noted previously, the modification agreement expressly indicated that final design plans were subject

to approval or rejection by the city council and this rejection of the plans did not constitute a breach of the alleged agreement to sell parcel M to the plaintiffs.

The court notes the close relationship between a redevelopment agency and a municipality's legislative body as reflected in chapter 130 of the General Statutes. *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 310, 514 A.2d 734 (1986).

Concerning the action by the city council in rejecting the plaintiffs' plans, no facts are alleged that warrant a judicial review of its decision.

The rule for judicial review of municipal legislative decisions is found in *McAdam* v. *Sheldon*, supra, 153 Conn. 281, which follows the seminal case of *Whitney* v. *New Haven*, 58 Conn. 450, 20 A. 666 (1890). "When municipal authorities are acting within the limits of the formal powers conferred upon them and in due form of law, the right of courts to supervise, review or restrain them is necessarily exceedingly limited. In part, this stems from the constitutional separation of the legislative, executive and judicial functions and powers. See cases such as *Malmo's Appeal*, 72 Conn. 1, 4, 43 A. 485 [1899]. And where, as here, the municipal authorities act in accordance with formal requirements, courts will interfere only 'where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize' the action taken. *Whitney* v. *New Haven*, supra [457]. Mere differences in opinion among municipal officers or members of the municipal electorate are never a sufficient ground for judicial interference. [Id.] This seems to be the general rule. 62 C.J.S., Municipal Corporations, §§ 199, 201; 13 McQuillin, Municipal Corporations (3d Ed.) §§ 37.03, 37.26; 18 [McQuillin, Municipal Corporations] (3d Ed. Rev.) § 52.21. Even without consideration of constitutional infirmities, any broader rule would potentially involve the courts in the review and

revision of many, if not all, major controversial decisions of the legislative or executive authorities of a municipality." *McAdams* v. *Sheldon,* supra, 281.

The plaintiffs claim that under the modification agreement, they received an option to purchase parcel L and, therefore, are entitled to the remedy of specific performance. An analysis of the language in the disposition and time table sections of the agreement does not support this claim. Rather, the plaintiffs first received a right to negotiate a plan with the redevelopment agency and the city retained the right to reject such plan. Under the language of the agreement, the plaintiffs could not be compelled to negotiate with the redevelopment agency nor was the city compelled to approve the plaintiffs' plan for redevelopment. The plaintiffs' rights, however characterized, were subject to the city's right to reject the plan. Only after approval of the plan by the city council does language in the agreement concerning execution by the municipality of the land disposition agreement constitute an offer to sell parcel M. This offer the plaintiffs could reject and the city could not compel the plaintiffs to accept.

No binding agreement to sell has been pleaded and, therefore, specific performance does not lie. See *Smith* v. *Hevro Realty Corp.,* 199 Conn. 330, 507 A.2d 980 (1986); *New Haven Trap Rock Co.* v. *Tata,* 149 Conn. 181, 177 A.2d 798 (1962); *Saraceno* v. *Carrano,* 92 Conn. 563, 103 A. 631 (1918).

II

THE DEFENDANTS' MOTION TO STRIKE THE FIFTH
COUNT OF THE PLAINTIFFS' COMPLAINT THAT
PURPORTS TO STATE A CAUSE OF ACTION
UNDER THE CONNECTICUT UNFAIR
TRADE PRACTICES ACT

In the fifth count of their complaint, the plaintiffs allege that the defendants' actions violated the Connect-

icut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; specifically General Statutes § 42-110b (a). CUTPA, however, is inapplicable to the acts of a municipality. *Connelly* v. *Housing Authority*, 213 Conn. 354, 363, 567 A.2d 1212 (1990); *Lomaglio Construction* v. *Berlin*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV930529998 (March 16, 1994); *Stratford* v. *Siciliano*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV920296847 (August 5, 1993) (8 C.S.C.R. 924); *Stack Contracting Services, Inc.* v. *Stamford*, Superior Court, judicial district of Waterbury, Docket No. CV91099908S (October 28, 1991) (5 Conn. L. Rptr. 233); *Metropolitan District* v. *Miller*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 386088 (September 25, 1991) (6 C.S.C.R. 919); *Messina* v. *Water Pollution Control Authority*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV277269S (January 28, 1991) (3 Conn. L. Rptr. 165); *French* v. *Board of Education*, Superior Court, judicial district of New Haven, Docket No. 285863 (December 20, 1990) (3 Conn. L. Rptr. 59); *Chernet* v. *Wilton*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV900108840S (September 28, 1990) (2 Conn. L. Rptr. 475); *Metcalfe* v. *Ridgefield*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV890103042S (April 27, 1990) (1 Conn. L. Rptr. 553).

The court is aware of the provision in General Statutes § 42-110c (b) that the burden of proving exemption from CUTPA is on the person claiming it. Here, however, the complaint alleges that the city is a municipal corporation and that the redevelopment agency was an agency of the municipality duly created by it.

The agreement of the parties here to attempt to resolve legal issues obviates any technicality relative to the burden of proof where the facts are undisputed.

Further, Practice Book § 6 provides for the liberal interpretation of the Superior Court rules where it is "manifest that a strict adherence to them will work surprise or injustice."

The present motion also embraces a claim for punitive damages and attorney's fees. The allegations in the complaint, however, do not rise to the level of the quality of conduct that support a claim for punitive damages. *Tessman* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 54, 634 A.2d 870 (1993); *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987); *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 128, 222 A.2d 220 (1966). Attorney's fees are not recoverable in contract actions unless there is a provision for them in the contract or by statute. *State* v. *Bloomfield Construction Co.*, 126 Conn. 349, 359, 11 A.2d 382 (1940).

III

THE DEFENDANTS' MOTION TO STRIKE THE CLAIM THAT THE PLAINTIFFS, AS STOCKHOLDERS IN THE S & L CORPORATION, WERE CAUSED TO LOSE THE ECONOMIC VALUE OF THEIR RESTAURANT AND TO LOSE SHAREHOLDERS' INTEREST IN A VALUABLE BUSINESS

Concerning this motion,[1] the complaint alleges that the plaintiffs, Arsen Lazaros and Grace Lazaros and Emanuel Sainis and Maria Sainis, were shareholders in the S & L Corporation, which operated a restaurant on parcel M, and, by reasons of the defendants' aforementioned conduct, they lost the economic value of their restaurant and have lost shareholders' interest in a valuable business.

---

[1] The court notes that the scope of the motion is the plaintiffs' interest in the restaurant only, and not in the land.

The issue posed by the present motion is whether shareholders of a nonparty corporation may maintain an action against a wrongdoer whose conduct adversely affected the corporation and caused the loss of stock equity.

It is a general rule that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation. *Gaff* v. *Federal Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987); see also *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 281–82, 422 A.2d 311 (1979).

An individual, nonderivative action, is only appropriate "if the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation" and if the injury "has affected the plaintiff directly." Id. There is no allegation in the complaint to suggest other than that all shareholders were identically situated and that their injuries were identical to those suffered by the S & L Corporation. See *Christ-Janer* v. *A. F. Conte & Co.*, 8 Conn. App. 83, 88, 511 A.2d 1017 (1986); see also *Rand* v. *Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), cert. denied, 479 U.S. 987, 107 S. Ct. 579, 93 L. Ed. 2d 582 (1986). "Any decrease in value of plaintiffs' shares merely reflects the decrease in value of the firm as a result of the alleged illegal conduct." *Rand* v. *Anaconda-Ericsson, Inc.*, supra, 849. Thus, a loss in value of a business suffered through a stockholder's interest does not give rise to an individual, nonderivative cause of action. Where the injury suffered is solely through a decrease in stock value, "only the corporation itself . . . or a stockholder suing derivatively . . . may maintain an action against the wrongdoer." *Vincel* v. *White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975).

## IV

### THE DEFENDANTS' MOTION TO STRIKE THE THIRD AND FOURTH COUNTS OF THE AMENDED COMPLAINT, WHICH PURPORTS TO ALLEGE CAUSES OF ACTION BY THE PLAINTIFFS DIORIO, CARNAVALLA, STARGIOTTI AND DILALLO

The third and fourth counts of the amended complaint, dated July 26, 1994, allege that Arsen Lazaros and Emanuel Sainis, in the company of and with the assistance of the plaintiffs Thomas DiOrio, James Carnavalla, Joseph Stargiotti and Louis DiLallo, submitted plans for the redevelopment of parcel M to the redevelopment agency, and that the plans were approved by the redevelopment agency but disapproved by the city council. The complaint further alleges that Arsen Lazaros and Emanuel Sainis entered into a joint venture agreement with DiOrio, Carnavalla, Stargiotti and DiLallo under the trade name of Harbor Mist Associates to develop parcel M and that they submitted plans to the redevelopment agency "at considerable cost and expense."

Clearly, DiOrio, Carnavalla, Stargiotti and DiLallo are not parties to any contractual relationship between Arsen Lazaros and Emanuel Sainis and the defendants here, nor is it alleged that they were. Further, the alleged joint venture agreement was not entered into until several months following the modification agreement. "[O]ne who was neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . ." *Coburn* v. *Lenox Homes, Inc.*, 173 Conn. 567, 570, 378 A.2d 599 (1977).

There is nothing in the terms of the modification agreement or alleged actions involving the parties to the agreement that DiOrio, Carnavalla, Stargiotti and DiLallo were intended beneficiaries under the

agreement, or that the defendants assumed any obligation to them. *Knapp* v. *New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A.2d 386 (1963).

V

THE DEFENDANTS' MOTION TO STRIKE THE PLAINTIFFS' CLAIMS IN THE SECOND AND FOURTH COUNTS REGARDING UNJUST ENRICHMENT AND RESTITUTION

Paragraphs one through eighteen inclusive of the first count of the complaint are incorporated into the second and fourth counts and are made a part thereof. These paragraphs allege that the plaintiffs Arsen Lazaros and Emanuel Sainis purchased a certain redeveloped parcel of land (parcel L) within the redevelopment area that was subject to and benefited by the redevelopment plan. In accordance with the provisions of the plan, the original deed and the land disposition agreement, they became "redevelopers." On or about February 16, 1978, in furtherance of their desire to modify the plan, the redevelopment agency solicited the consent of the plaintiffs to a modification of the existing plan whereby twenty-five acres of the original plan previously designated commercial, recreational and apartment development would become "open space" or "park" use only. The modification would have a detrimental effect on parcel L. On May 17, 1979, the plaintiffs consented to the terms of the modification agreement, a copy of which was attached to the complaint and identified as an exhibit.

Paragraphs nineteen through twenty-seven of the second count of the complaint allege that the redevelopment agency extended to the plaintiffs an "option" to purchase parcel M and that the plaintiffs, together with DiOrio, Carnavalla, Stargiotti and DiLallo, prepared plans at considerable expense for the development of

parcel M. These plans were approved by the redevelopment agency but disapproved by the city council. The second count concludes with the naked allegation that, as a result of the denial of approval of their plans, the defendants have been unjustly enriched at the expense of the plaintiffs.

The only relationship between the parties described in the second and fourth counts is that of an express contract. Where parties have entered into an express contract, they are bound by its terms to the exclusion of inconsistent implied contract obligations. Here, the plaintiffs have alleged an express contract, and this fact precludes the application of the equitable remedy of unjust enrichment absent any allegation that the defendants breached the contract, that there was a nonwilful breach by the plaintiffs or that there was a mutual recission of the contract. *Feng* v. *Dart Hill Realty, Inc.*, 26 Conn. App. 380, 383, 601 A.2d 547, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992).

Actually, the thrust of the plaintiffs' allegations is enforcement of the modification agreement. Where no cause of action in unjust enrichment has been alleged, the remedy of restitution is barred. The allegations in the second and fourth counts fail to specify the fashion in which the defendants have benefited by the plaintiffs' action thereby entitling them to compensation in equity. "Unjust enrichment applies when justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." (Internal quotation marks omitted.) *Bolmer* v. *Kocet*, 6 Conn. App. 595, 612, 507 A.2d 129 (1986).

The court therefore orders that the motions to strike the allegations of the complaint and the prayers for relief are granted except for the allegation sounding in breach of contract insofar as it relates to its impact on

the value of land (parcel L) owned by the plaintiffs Arsen Lazaros, Emanuel Sainis and Maria Sainis and the claim for money damages. The plaintiffs are further ordered to file a substituted complaint reflecting the court's ruling in the present case.